COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-256-CR

DANA M. O’SHEA APPELLANT

 V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------ 

I.  Introduction

In three points, Dana M. O’Shea appeals the trial court’s denial of her motion to suppress.  After the trial court denied O’Shea’s motion to suppress,  she pleaded no contest to the charge of driving while intoxicated (DWI). Pursuant to the plea agreement, O’Shea retained the right to appeal the trial court’s ruling on her motion to suppress.  For the reasons set forth below, we will affirm.

II.  Factual Background

At approximately 1:30 a.m. on May 6, 2005, Officer J.E. Hill of the Fort Worth Police Department observed O’Shea driving erratically on South University Drive; specifically, O’Shea’s vehicle was not maintaining a single lane.  Officer Hill initiated a traffic stop.  When Officer Hill approached the vehicle and began speaking to the driver, O’Shea, he detected an odor of alcohol and noticed that O’Shea’s speech was slurred and her eyes were dilated and glassy.  Officer Hill asked O’Shea if she had been drinking, and O’Shea responded that “she had one beer.”  But the passenger in O’Shea’s vehicle simultaneously stated that “they had both had several beers to drink.”  Officer Hill then conducted three field sobriety tests on O’Shea, and O’Shea failed all of the tests.  Officer Hill arrested O’Shea for DWI.   

O’Shea filed a motion to suppress.  The motion argued that all of the statements and evidence obtained during the traffic stop should be suppressed because O’Shea was in custody at that time but was not given 
Miranda
 warnings.  O’Shea testified at the suppression hearing that if she had been given 
Miranda
 warnings, she would not have said anything and would not have performed any field sobriety tests.  

III.  Standard of Review

We review a trial court’s 
ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing a trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

Stated another way, when reviewing a trial court’s ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court’s ruling.  
State v. Kelly
, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court’s ruling, supports those fact findings.  
Id
. at 818-19.  We then review the trial court’s legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  
Id
. at 819.

When the record is silent on the reasons for the trial court’s ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court’s ruling if the evidence, viewed in the light most favorable to the trial court’s ruling, supports those findings.  
Id
.  We then review the trial court’s legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling.  
Id
.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

IV.  
Only Reasonable Suspicion is Required to Request Field Sobriety Tests;

Conduct of Performing or Refusing Field Sobriety Tests is

Not Protected First Amendment Conduct

Although O’Shea’s arguments are somewhat difficult to discern, in her first two points she seems to complain that she was denied due process and equal protection of the law under the Fourth Amendment, Fourteenth Amendment, Texas Constitution, and the Texas Code of Criminal Procedure because the same constitutional protections applicable to persons arrested for a criminal offense should apply to persons subjected to field sobriety tests.   
See 
U.S. Const.
 amend. IV, XIV; 
Tex. Const.
 art. I, § 9; 
Tex. Code Crim. Proc. Ann.
 art. 38.22 (Vernon Supp. 2006).  O’Shea argues that by not affording her the same constitutional protections applicable to those persons under arrest for a criminal offense, the police denied her due process and equal protection of the law.

We have recently decided this exact issue against O’Shea.  
See Arthur v. State
, 216 S.W.3d 50, 53-58 (Tex. App.—Fort Worth 2007, no pet.).  In 
Arthur
, we held that a person’s rights under the Fourth Amendment, article one, section nine of the Texas Constitution, and article 38.22 of the code of criminal procedure are not violated by an initial detention and subsequent request to perform field sobriety tests as long as the detention is supported by specific, articulable facts and carefully tailored to its underlying justification.  
See id. 
(setting forth extensive analysis of these issues).  

Here, Officer Hill observed O’Shea’s vehicler straddling a marked lane divider for approximately one full block.  After Officer Hill stopped O’Shea for failing to maintain a single lane of traffic and approached her vehicle, he detected an odor of alcohol coming from O’Shea and observed that her speech was slurred and her eyes were dilated and glassy.  During the initial conversation with Officer Hill, O’Shea admitted that she had been drinking that evening.
(footnote: 2)  Collectively, these specific, articulable facts were sufficient to give Officer Hill reasonable suspicion to detain O’Shea further to conduct field sobriety tests.  
Matthew Ford v. State
, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005).  
Conducting field sobriety tests was the least intrusive means that Officer Hill could employ to determine whether O’Shea was driving while intoxicated.  
See Arthur
, 216 S.W.3d at 55.  We therefore hold that O’Shea’s rights under the Fourth Amendment, article one, section nine of the Texas Constitution, and article 38.22 of the code of criminal procedure were not violated when Officer Hill temporarily detained her and requested that she perform field sobriety tests.  
See id.
 at 55-56.
  
Because the constitutional protections applicable to persons under arrest for a criminal offense differ from those applicable to persons who are merely detained based upon reasonable suspicion, and because O’Shea was merely detained based upon reasonable suspicion, we likewise hold that O’Shea was not denied due process and equal protection of the law under the Fourteenth Amendment.

Also in connection with her second point—that persons detained for suspicion of DWI are entitled to the same constitutional protections as those who are arrested for a criminal offense—O’Shea 
reasons that she has “a right under the United States Constitution through the First, Fourth, and Fourteenth Amendment not to be required to move [her] body or be required to unless informed of the consequences of such movement.”  In short, O’Shea argues that if law enforcement officers do not inform her of the consequences of her actions during a field sobriety test, then she has a right to not move her body and to not perform the tests.  But O’Shea cites no authority, and we have found none, indicating that she has a right to be informed of the consequences of performing field sobriety tests.  Likewise, no authority exists supporting O’Shea’s broad assertion that body movements, in general, are protected under the First Amendment.  In fact, the case law is to the contrary.

Although the First Amendment protects speech and other forms of expressive conduct, not all forms of body movement constitute expressive conduct.  
See City of Dallas v. Stanglin
, 490 U.S. 19, 25, 109 S. Ct. 1591, 1595 (1989) (“It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one’s friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.”).  First Amendment scrutiny is not required where the government is regulating non-expressive conduct.  
Arcara v. Cloud Books, Inc.
, 478 U.S. 697, 708, 106 S. Ct. 3172, 3178 (1986) (O’Connor, J., concurring) (“Any other conclusion would lead to the absurd result that any government action that had some conceivable speech-inhibiting consequences, such as the arrest of a newscaster for a traffic violation, would require analysis under the First Amendment.”).  Conduct is expressive if it possesses “sufficient communicative elements” and “[a]n intent to convey a particularized message was present, and . . . the likelihood was great that the message would be understood by those who viewed it.”  
Spence v. Washington
, 418 U.S. 405, 410-11, 94 S. Ct. 2727, 2730 (1974); see also 
Littlefield v. Forney Indep. Sch. Dist.
,
 
268 F.3d 275, 283 (5th
 Cir. 2001).  O’Shea’s conduct here—performing or not performing field sobriety tests—did not contain “sufficient communicative elements” and no intent existed to convey a particularized message through the conduct or lack thereof.  
See Spence
, 418 U.S. at 410-11, 94 S. Ct. at 2730.  Because we hold that O’Shea’s performance or nonperformance of field sobriety tests is not protected conduct under the First Amendment, 
we need not 
engage in a First Amendment  analysis.  
See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.
, 473 U.S. 788, 797, 105 S. Ct. 3439, 3446 (1985) (holding that when a court determines that no protected First Amendment right is involved, it need go no further).

Having held that O’Shea’s detention and field sobriety tests administered to her did not constitute unreasonable searches or seizures under the Fourth Amendment, article one, section nine of the Texas Constitution, or article 38.22 of the code of criminal procedure, and did not implicate a First Amendment right, we overrule O’Shea’s first and second points.

V.  
Miranda
 Warnings Not Required Prior to Field Sobriety Testing

In her third point, O’Shea contends that she was in custody after Officer Hill stopped her, and that all evidence obtained during the stop and before she was given 
Miranda
 warnings was inadmissible.  Even assuming that O’Shea was in custody when Officer Hill stopped her, the Fifth Amendment applies only to incriminating evidence that is testimonial in nature.  
See Williams v. State
, 116 S.W.3d 788, 791 (Tex. Crim. App. 2003).  And sobriety tests do not unveil evidence that is testimonial in nature because the results merely produce physical evidence of a suspect’s mental and physical faculties.  
See Gassaway v. State
, 957 S.W.2d 48, 51 (Tex. Crim. App. 1997); 
Arthur
, 216 S.W.3d at 54.  Accordingly, O’Shea was not entitled to 
Miranda
 warnings prior to performing the field sobriety tests, and the failure to provide those warnings does not render the test results inadmissible.  
Arthur
, 216 S.W.3d at 54-55.  We overrule O’Shea’s third point.

VI.  Conclusion

Having overruled O’Shea’s points, we affirm the trial court’s judgment.

 SUE WALKER

 JUSTICE

PANEL B: DAUPHINOT, WALKER, and McCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: April 19, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
We also note that the passenger in the vehicle also admitted that he and O’Shea had been drinking that night.